UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Shapco Printing, Inc.,                                            Civ. No. 21-2155 (PAM/ECW)

        Plaintiff,

v.                                                               **MEMORANDUM AND ORDER**

MKM Importers, Inc.,

        Defendant.

---

This matter is before the Court on Defendant MKM Importers' partial Motion to Dismiss.  (Docket No. 22.)  For the following reasons, the Motion is denied.

**BACKGROUND**

In the summer of 2020, Plaintiff Shapco Printing sought to purchase a printing press for its factory.[1]  (Am. Compl. (Docket No. 20) ¶ 5.)  Joel Shapiro, Shapco's Chief Executive Officer, negotiated with Defendant MKM Importers regarding brokering the purchase of a KBA commercial printing machine ("the equipment").  (Id. ¶¶ 5, 6.) Throughout the negotiation process, Mark Marino, MKM's president and Chief Executive Officer, repeatedly assured Shapco that MKM could provide a "fully installed and operable printing press."  (Id. ¶¶ 8, 12.)  On August 10, 2020, Marino told Shapco that he "spoke to [his] service manager who inspected the press [sic] it was in a very high quality cosmetic printer printing short run top quality work," declaring that Shapco "[would] not find a better press or a better price for a press like this."  (Id. ¶ 8.)  Marino further assured Shapco that

---

[1] For the purposes of this Motion, the Court takes the facts pled as true.

"MKM [was] better than other  brokers because it '[would] not cut corners, and [MKM] always deliver[s] a high-quality machine with a high quality installation.'" (Id. ¶ 9.) MKM told Shapco that it "would take care of any issues with the [e]quipment" and assured that the equipment was "fully operational" and "as clean as they get." (Id. ¶ 7.)

During the negotiation process, "MKM and Marino coordinated and worked with Jeff Grupp, the president of Superior Graphic Equipment, LLC, in communicating the condition of the [e]quipment and [assuring] that Shapco would receive a fully installed and operable printing press." (Id. ¶ 12.) In an email exchange in early August 2020, Grupp told Shapco that "we have the best KBA engineer in the country penciled in to do this installation for you starting late Sept[ember] or very early October." (Id. ¶ 13.) Grupp also relayed that the "press looks like it's new now" and that "[they would] take care of [Shapco] on this deal . . . no matter what." (Id. ¶ 15.) MKM and Grupp sent Shapco pictures and at least one video of equipment purported to be the printing press available for Shapco to purchase. (Id. ¶¶ 11, 16.)

"In August 2020, Shapco and MKM entered into a  written purchase agreement . . . whereby Shapco paid $2,100,000 to MKM to purchase the [e]quipment." (Id. ¶ 19.) MKM drafted the agreement, in which MKM promised to "deliver the [e]quipment on or before December 31, 2020 and complete installation and satisfaction of GATF print testing no later than January 31, 2021, time being of the essence thereof." (Id. ¶ 22.) MKM further agreed to replace all rollers and hoses in the equipment and to be responsible for "[a]ll hours of [i]nstallation." (Id. ¶¶ 20, 21.)   MKM is a Connecticut

2

company, so the parties agreed that Connecticut law applied to any claims arising from the contract.  (Agreement (Docket No. 25) ¶ 17.)

Shapco claims that when the equipment arrived, it neither fit MKM's description nor resembled the equipment depicted in the video and pictures that MKM sent Shapco before entering the contract.  (Am. Compl. ¶ 25.)  Specifically, Shapco alleges that the equipment:  "had been stored in a non-temperature controlled facility for a substantial period of time," "was filthy and had significant cosmetic and mechanical damage," "had water damage, with motors and movable parts covered in rust and old dried ink," and "had at some point been infested with rodents" who "had chewed through some of the wiring." (Id. ¶¶ 25-28.)  Additionally, the equipment's hoses "were old, cracked, and broken— appearing to have UV-exposure damage."  (Id. ¶ 28.)  Finally, it "had also not been packaged or shipped in a proper or coherent manner.  Various components were not properly secured to the pallets and were falling off or loose."  (Id. ¶ 29.)

Shapco notified MKM regarding these issues, and MKM assured Shapco that it would meet the purchase agreement's January 31, 2021, deadline to have the equipment fully operational and installed.  (Id. ¶ 30.)  But "MKM's installation of the [e]quipment was plagued with delays, missed deadlines, and incomplete and substandard work.  These delays were caused in part by the condition of the [e]quipment, but were also caused by MKM's failure to send a sufficient number of trained installers to perform its contractual obligations."  (Id. ¶ 33.)  In an email sent to Shapco on March 2, 2021, MKM stated that it was "[d]efinitely not looking for a pat on the back.   We haven't earned that in this case.

Just want to reassure you that we'll get things finished up properly." (Id. ¶ 37.) Finally, in July 2021, "MKM performed a GATF print testing without Shapco's consent," and although the equipment passed the test, "it was not and still is not fully operational and correctly installed." (Id. ¶¶ 40, 41.)

On September 2, 2021, Shapco filed suit against MKM in Hennepin County and MKM subsequently removed the lawsuit to this Court. (Docket No. 1.) Shapco's Amended Complaint raises a breach-of-contract claim and a fraud claim. MKM moves to dismiss only the fraud claim.[2]

**DISCUSSION**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true. Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support a claim. Iqbal, 556 U.S. at 678. At this stage, the Court assumes

---

[2] MKM also moved to dismiss a recission claim that Shapco did not include in its Amended Complaint. In its Reply Memorandum, MKM recognized that this part of its Motion is moot. (Docket No. 31 at 1.)

the allegations in the Amended Complaint are true and views them in the light most favorable to Shapco.  See Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 933 n.4 (8th Cir. 2012).

To state a claim for fraudulent inducement, Shapco must allege that MKM knowingly made a false statement of fact in order to induce Shapco to act, and that Shapco "did so act upon that false representation" and was injured as a result.  Peterson v. McAndrew, 125 A.3d 241, 257 (Conn. App. Ct. 2015).

## A.    Puffery

MKM maintains that Marino's statements regarding the equipment are mere puffery and consist only of his general opinion; therefore, the statements do not give rise to a warranty or liability for Shapco's fraud claim.  Puffery consists of "[s]ubjective claims about products which cannot be proven either true or false."  Anthem Sports, LLC v. Under the Weather, LLC, 320 F. Supp. 3d 399, 415 (D. Conn. 2018) (quoting Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 155, 159 (2d Cir. 2007)).  "Connecticut courts have long recognized, in the context of the sale of goods, the fine distinction between advertisement or 'puffery' and language that creates a warranty."  Chipperini v. Hoffman of Hartford, Inc., No. KNLCV136017444S, 2014 WL 4099335, at *3 (Conn. Super. Ct. July 16, 2014) (quotation omitted).  "Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." NetScout Sys., Inc. v. Gartner, Inc., 223 A.3d 37, 55 n.15 (Conn. 2020) (quoting Newcal Indus., Inc. v. IKON Off. Sol., 513 F.3d 1038, 1053 (9th Cir. 2008)).  Connecticut courts

also consider oral, rather than written, statements more likely to be puffery.  Web Press
Servs. Corp. v. New London Motors, Inc., 525 A.2d 57, 62-63 (Conn. 1987).

While some of Marino and MKM's statements ring of puffery, such as "you will not
find a better press or a better price for a press like this" and that MKM would "not cut
corners," other statements are more specific and concrete.  Examples of such statements
that are not puffery include MKM's assurances that it would install the equipment, replace
all rollers and hoses, and "take care of any issues."  Moreover, some of MKM's statements
were in written form.

MKM further contends that because the Amended Complaint does not include any
allegation that Grupp worked for MKM at the time the deal was brokered, none of his
statements regarding the equipment can be imputed to MKM.  For the purposes of this
Motion, Shapco has sufficiently alleged that Grupp was an agent of MKM in brokering the
sale of the equipment to Shapco.   Whether Grupp was an agent of MKM is a fact-intensive
inquiry cannot be resolved at this stage of litigation.  Regardless, Shapco's fraudulent-
indument claim does not solely hang on Grupp's statements.

Additionally, Shapco alleges that the photos and video of the equipment constituted
material misrepresentations that induced Shapco to buy it.  MKM contends Connecticut
law is unclear as to whether a photo or video can constitute a fraudulent statement, but
provides no authority to this end.  MKM's representations regarding the photos and videos
constitute fraudulent statements for the purposes of this Motion.

**B.      Purchase Agreement**

MKM contends that the purchase agreement bars Shapco's fraudulent-inducement claim.  The at-issue provision states:

> [Shapco] represents it will have had the opportunity to inspect the [e]quipment upon its release for delivery in its existing condition, and that the [e]quipment conform to the description on the face hereof in clean condition.   ALL WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS,  IMPLIED  AND  STATUTORY,  ARE  HEREBY DISCLAIMED.     ALL    IMPLIED    WARRANTIES    OF MERCHANTABILITY  AND  FITNESS  FOR  A  PARTICULAR PURPOSE ARE HEREBY DISCLAIMED.  THE EQUIPMENT IS SOLD "AS IS" WITH NO EXPRESS OR  IMPLIED WARRANTIES OF ANY NATURE  WHATSOEVER.   [Shapco] acknowledges and agrees that [MKM] is not the manufacturer of the [e]quipment; that [MKM], nor any director, officer, stockholder, employee, agent, representative or attorney of or for [MKM], has made any representation, promise, assurance, warranty, guarantee or the like to [Shapco] regarding the [e]quipment as an inducement to entering into this Agreement or otherwise; and that [Shapco] has not relied upon same.

(Agreement  ¶ 10.)    According to MKM, the agreement precludes any fraudulent-inducement claim because it states that Shapco did not rely on any representation made by MKM.   However, "a clause disclaiming reliance by the buyer on the seller's representations" is only valid "in the absence of a claim of mistake, fraud or unconscionability."  <u>Martinez v. Zovich</u>, 867 A.2d 149, 153 (Conn. App. Ct. 2005) (quoting <u>Gibson v. Capano</u>, 699 A.2d 68, 71 (Conn. 1997)).  Because Shapco alleges that MKM's fraudulent misrepresentations induced it to enter the contract, any disclaimer of warranties does not bar Shapco's claim.

MKM further argues that the "as-is" clause discharges MKM of any liability.  But Shapco's claim for fraudulent inducement extends beyond the state of the equipment,

7

alleging that MKM misrepresented its intentions to install the equipment and ensure that it was fully operational for Shapco.  This argument fails.

Due to Shapco's allegations of fraud, the disclaimer in the purchase agreement does not support does not support dismissing the claim.

## C.    Damages

Two types of damages exist in a contractual dispute: "(1) direct damages, composed of the loss in value to [one party] of the other party's performance caused by its failure or deficiency;  plus, (2) any other loss, including incidental or consequential loss, caused by the breach."  City of Milford v. Coppola Constr. Co., 891 A.2d 31, 39 (Conn. App. Ct. 2006) (internal citations and quotations omitted).

In the Amended Complaint, Shapco asks for damages related to costs associated with the non-functioning equipment and various installation costs, and damages stemming from lost customers and at least $50,000 in lost profits due to MKM's alleged breach.  (Am. Compl. ¶¶ 70-73.)

MKM moves to dismiss only Shapco's claim for damages due to lost customers and profits, asserting that the parties' purchase agreement expressly bars claims for such consequential damages.  In relevant part, the agreement states:

> Except as provided in this agreement, in no event shall [MKM] (including its officers, agents, employees[,] representatives, attorneys and parent, subsidiary and affiliated companies) be liable for damages of any nature, including without limitation, special, direct, indirect, incidental or consequential damages, whether or not relating to or in any manner resulting from or rising out of or in connection [sic] any defect in material and workmanship or design of the [e]quipment.

8

(Agreement ¶ 11.)    Shapco contends that damages resulting from "equipment downtime . . . are general damages and not consequential as they naturally follow from a breach of this kind." <u>Coppola</u>, 891 A.2d at 40.  MKM presents no authority to rebut this argument, and instead relies on cases stating that consequential damages include lost profits.   The <u>Coppola</u> court clarified that while lost profits generally are considered consequential damages, under certain circumstances they are more appropriately considered direct damages.  <u>Id.</u>  Machinery lying idle is one such circumstance, this type of "equipment downtime" is what Shapco alleges occurred.  <u>Id.</u> at 39.  In any event, ambiguity in the contract's language is construed in Shapco's favor, because MKM drafted the agreement.  <u>Cantonbury Heights Condo. Ass'n, Inc. v. Loc. Land Dev., LLC</u>, 873 A.2d 898, 904 (2005).  MKM's damages argument fails.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Defendant's partial Motion to Dismiss (Docket No. 22) is **DENIED**.

Dated: <u>Friday, January 14, 2022</u>

<u>s/ Paul A. Magnuson</u>
Paul A. Magnuson
United States District Court Judge
